Filed 5/22/15  P. v. Young CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DAWN SERRENA YOUNG,<br><br>　　　　Defendant and Appellant. | C075380<br><br>(Super. Ct. No. NCR67682) |

Defendant Dawn Serrena Young appeals from the denial of an application for restoration of sanity under Penal Code section 1026.2.[1]  On appeal, defendant alleges a federal constitutional violation because she should have been allowed "at least [to] present her case that she was either no longer dangerous or no longer if ever mentally ill, and satisfy the court that she did not need a year of supervision in the outpatient program to meet her burden of proof."  In support, defendant cites *Foucha v. Louisiana* (1992) 504

---

[1]　　　　Undesignated statutory references are to the Penal Code.

1

U.S. 71 [118 L.Ed.2d 437] (*Foucha*), which held substantive and procedural due process guarantees allow the state to confine an insanity acquittee in a mental institution only so long as the person is mentally ill *and* dangerous. (*Id.* at p. 77.) Though defendant does not cite the particular constitutional provision she believes the trial court violated in this case, we interpret the citation to *Foucha* as raising substantive and procedural due process challenges. Given that defendant makes no comparison to any other similarly situated persons, we determine no equal protection claim is raised.

We reject defendant's procedural due process argument because the trial court actually heard her request for immediate release. As to the substantive due process challenge, we reject it on the same basis as articulated in *People v. Beck* (1996) 47 Cal.App.4th 1676 (*Beck*). Accordingly, we affirm the order denying defendant's application for immediate restoration to sanity.

FACTUAL AND PROCEDURAL HISTORY

In 2008, defendant was found not guilty by reason of insanity of second degree murder of her 18-month-old child. She was committed to Napa State Hospital for a maximum term of life.

On June 27, 2013, defendant filed, in propria persona, a motion for substitution of counsel (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)) with her application for restoration of sanity and request for a court or jury trial.

On October 7, 2013, defendant withdrew her *Marsden* motion. The trial court commented that defendant's in propria persona application for restoration of sanity should have been filed separately and "possibly not even filed at all." Defendant's trial attorney noted defendant had filed an application without any supporting documentation. Nonetheless, defense counsel stated, "I can have the petition filed" within two or three weeks. The trial court scheduled a hearing to review the documents defense counsel

would file.  However, defense counsel did not file a separate application for restoration of sanity or any documents in support of such an application.

On December 2, 2013, defense counsel informed the trial court defendant requested immediate release despite the section 1026.2 requirement of a two-step process.  Defense counsel asked that the court consider and rule upon defendant's application for restoration of sanity filed in propria persona.[2]  The People did not object, but simply submitted.  Citing *People v. Tilbury* (1991) 54 Cal.3d 56, the trial court denied defendant's application and explained to defendant that application for restoration of sanity required a two-step process.  The court further explained defendant would have to comply with the process to determine her eligibility for the outpatient program.

Defendant filed a notice of appeal in propria persona.  Defense counsel filed a redundant notice of appeal.

DISCUSSION

I

***Defendant's Due Process Challenges to the One-year
Outpatient Requirement in Section 1026.2***

As noted in our introduction, defendant appears to raise procedural and substantive due process challenges to section 1026.2's one-year outpatient requirement.

**A.**

***The Outpatient Requirement***

In *Beck*, *supra*, 47 Cal.App.4th 1676, the First District explained that "[a] person committed to a state hospital after a verdict of not guilty by reason of insanity may apply for conditional release after a period of 180 days from the date of the order of

---

[2]    Defendant's application filed in propria persona on December 2, 2013, is the same one defendant filed in propria persona on June 27, 2013.  Both are dated June 21, 2013.

3

commitment.  (. . . §§ 1026, subd. (a), & 1026.2, subd. (d).)  Subdivision (e) of . . . section 1026.2 establishes a two-step procedure for processing such an application.  First, the court holds a hearing to determine whether the applicant 'would be a danger to the health and safety of others, due to mental defect, disease or disorder, if under supervision and treatment in the community.'  If the court finds no impediment, it shall order the person to be placed in a local outpatient program for a period of one year.  At the end of the year, the court shall conduct a trial 'to determine if sanity has been restored, which means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder.'  The court may not set the trial before the person has completed a year of outpatient treatment unless the program director recommends an earlier release.  (*People v. Superior Court* (*Woods*) (1990) 219 Cal.App.3d 614.)" (*Beck*, at p. 1681.)

## B.

### *Procedural Due Process*

The essence of procedural due process is notice and an opportunity to respond. (*Cleveland Bd. of Education v. Loudermill* (1985) 470 U.S. 532, 546 [84 L.Ed.2d 494].) "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." (*Ibid.*)  Here, defense counsel actually presented to the court defendant's request for immediate release despite the two-step process of section 1026.2.  The trial court heard the argument and rejected it on the merits.  The hearing by the trial court on the issue of application for immediate release comported with federal procedural due process guarantees.

## C.

### *Substantive Due Process*

Defendant challenges the outpatient requirement of section 1026.2 on substantive due process grounds by citing the concurrence of Justice O'Connor in *Foucha, supra,*

4

504 U.S. at pages 86 to 90. In defendant's view, Justice O'Connor's concurrence signals that a state may confine a defendant found not guilty by reason of insanity in a mental institution only while defendant is mentally ill and dangerous. Defendant seems to assert that immediate release is necessary the moment the state can no longer establish dangerousness. Thus, defendant argues the one-year outpatient requirement of section 1026.2 violates substantive due process. A nearly identical contention was rejected in *Beck*, *supra*, 47 Cal.App.4th 1676.

*Beck* involved a defendant who had been found not guilty by reason of insanity to a charge of kidnapping with an enhancement for infliction of great bodily injury. (47 Cal.App.4th at p. 1679.) Undisputed evaluations by mental health professionals concluded the defendant was not dangerous and should be returned home. (*Id.* at p. 1680.) Accordingly, defendant applied for immediate release under the holding of *Foucha*. (*Ibid.*) Defendant contended *Foucha* held that substantive due process guarantees prevented the state from requiring him to complete the one-year outpatient residency under section 1026.2. (*Id.* at pp. 1680-1681.) The trial court denied the application for immediate release, and the appellate court affirmed. (*Id.* at p. 1679.)

As the *Beck* court explained, section 1026.2 was expressly amended to follow the United States Supreme Court's holding in *Foucha*. "In 1993, the statute was amended to conform to *Foucha, supra*, 504 U.S. 71, by adding the language 'due to mental defect, disease or disorder[]' to the requirement that the insanity acquittee remain in the outpatient program for a year before being restored to sanity." (*Beck*, *supra*, 47 Cal.App.4th at pp. 1681-1684.) The language added to section 1026.2 was intended to be consistent with *Foucha*'s holdings that " '[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed' " and that "substantive due process bars any restriction of a person's liberty

5

which does not serve some valid state interest, such as the treatment of mental illness, deterrence of crime or, under certain narrow circumstances, protection of others in the community." (*Beck*, at pp. 1682-1683, citing *Foucha*, at pp. 79, 80-81.)

Section 1026.2's one-year outpatient residency requirement, the *Beck* court concluded, passes muster under *Foucha*. "First, an acquittal by reason of insanity entails a finding that the defendant in fact committed a criminal offense. The commission of the crime in turn supports an inference of potential dangerousness and possible continuing mental illness (see *Jones v. United States* [(1983)] 463 U.S. [354,] 364–366) which justifies the state in exercising great care in evaluating the offender prior to release into the community. Second, the process of evaluating the defendant for a prolonged period in a noninstitutional setting has obvious merit. It provides a 'trial run' for the defendant's release, conducted under conditions resembling what the defendant will later find in the community. (See *People v. Superior Court* (*Woods*) [(1990)] 219 Cal.App.3d [614,] 617.) Third, the fact that participation in an outpatient program involves a lesser interference with personal liberty than institutional commitment makes it easier to justify a longer period of restriction. (Compare *Vitek v. Jones* (1980) 445 U.S. 480, 491–492, 63 L.Ed.2d 552; *People v. DeGuzman* (1995) 33 Cal.App.4th 414, 419–420.) In this respect, we note that the local program director may recommend an outpatient for release at any time during the year, thereby giving him [or her] a right to apply immediately for restoration of sanity." (*Beck*, at p. 1684.) Although the *Beck* court acknowledged that "this discretionary authority does not cure due process objections," it nonetheless had the effect of "mollifying the conditions of restraint entailed in the one-year program of outpatient treatment." (*Ibid.*)

Ultimately, the substantive due process question comes down to whether one year is a constitutionally excessive amount of time for an outpatient program to test whether an insanity acquittee should be finally released. After considering a former one-year

6

mental hospital confinement requirement that was held by the California Supreme Court to pass constitutional muster (*In re Slayback* (1930) 209 Cal. 480, 491), the *Beck* court concluded section 1026.2's one-year outpatient requirement also comported with substantive due process. (47 Cal.App.4th at p. 1685.) As *Beck* reasons: "Is such a statutory scheme beyond the power of the Legislature to enact? The question presents a matter of degree. At some point, a lengthy period of restriction would exceed the needs of reasonable evaluation. That point has not been reached in the case at bar. In light of the strong public interest in avoiding premature release of mentally disordered acquittees and the uncertainties in psychiatric evaluation, we find that 'the nature and duration of commitment bear some reasonable relation to the purpose for which [appellant was] committed.' " (*Beck*, at p. 1685, quoting *Jackson v. Indiana* (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435.) The *Beck* court's reasoning is persuasive and applicable in this case. Consequently, we reject defendant's contention that section 1026.2's one-year outpatient residency requirement for an insanity acquittee violates federal substantive due process guarantees.

DISPOSITION

The order denying defendant's application for restoration to sanity is affirmed.


                                         HOCH , J.


We concur:


MAURO , Acting P. J.


MURRAY , J.